**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

**FILED**
JAMES J. WALDRON, CLERK

May 20, 2010

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/Diana Reaves, Deputy

|   |   |   |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
|  | : |  |
| Brookdale Gardens Association, Inc., | : |  |
|  | : | CASE NO.:   09-41305  (NLW) |
| Debtor. | : |  |
|  | : | **OPINION** |

**Before:** **HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Chad Friedman, Esq.
Ravin Greenberg, LLC
101 Eisenhower Parkway
Roseland, NJ 07068
Attorneys for Debtors

Andrew J. Kelly, Esq.
Kelly & Brennan, PC
1011 Highway 71, Suite 200
Spring Lake, NJ 07762
Attorneys for Bloomfield Condominium Associates, LLC

Dennis J. Drasco, Esq.
Bernadette Conlon, Esq.
Lum, Drasco & Positan, LLC
103 Eisenhower Parkway
Roseland, NJ 07068
State Court Appointed Special Fiscal Agent for Debtor

Lawrence H. Olive, Esq.
460 Bloomfield Avenue
Montclair, NJ 07042
Attorney for Kathleen Karcher

This matter presently before the court is a motion for the imposition of sanctions for the bad faith filing of a Chapter 11 petition. As set forth at greater length below, the monetary sanctions are allowed in the sum of $73,767.09, the full amount requested.

The court has jurisdiction to review and determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF FACTS

### A. The Parties

Brookdale Gardens Association, Inc. (the "Association") filed for Chapter 11 relief on November 20, 2009. The case was short-lived. By order dated December 15, 2009, pursuant to 11 U.S.C. § 305(a), the court abstained and dismissed the case.

The Association is a not-for-profit condominium association for a complex known as Brookdale Gardens, in Bloomfield, New Jersey. Brookdale Gardens is comprised of 392 residential units. The Association was formed in the late 1980's when the rental apartments were converted to condominium ownership.

The conversion was originally sponsored by an entity known as Bloomfield Associates. Its successor in interest, Bloomfield Condominium Associates, LLC ("Sponsor") currently owns or controls 314 units, of which 310 units are owned by the Sponsor. (Debtor's Application for Entry of an Order Directing the Special Fiscal Agent to Turnover All Books and Records and Bank Accounts to the Debtor ("Turnover Motion") ¶¶ 6, 7).

In Spring 2000 a group of approximately thirty-four (34) non-sponsor unit owners ("State Court Plaintiffs") commenced litigation in the Superior Court of New Jersey, Chancery Division,

Essex County ("State Court Action").  Among the defendants named in the complaint were the Sponsor, Alex Bristricer, David Bristricer, Morris Bistricer, Elsa Bistricer and Bloomfield Management Company (collectively, the "Sponsor Defendants").[1] (Certification of Dennis J. Drasco, Esq. In Support of Motion to Enjoin and Restrain Turnover of Funds to the Debtor; to Dismissing the Chapter 11 Proceeding, etc. ("Drasco November 2009 Cert.")  ¶¶ 4,5).

After several years of litigation, the Hon. Kenneth S. Levy determined that the best interest of the Association and the unit owners required the appointment of a Special Fiscal Agent, and by order dated February 16, 2007, he appointed Dennis J. Drasco, Esq. ("SFA") to that position.

### B.     Litigation History

Both the State Court Plaintiffs and the Association agree that the Sponsor owns eighty percent (80%) of the Brookdale Gardens units. (Turnover Motion ¶ 8; Drasco November 2009 Cert. ¶ 6).  Similarly, there is agreement that the function of the Association is to manage the operations of the complex and that the funds for doing so are generated from dues and assessments paid by the Brookdale Gardens unit owners.  Further, it also appears that the parties agree that under the Association's By-Laws the Sponsor has the authority to name the majority of the Board members, and that the Sponsor dominated Board managed the Association until the SFA was appointed. Sadly, there is little further agreement.

The suit filed by the State Court Plaintiffs alleges in part:

> ... mismanagement on the part of the Sponsor by virtue of their failure to offer for sale the unsold units (totaling 312 out of 392) contrary to the Public Offering Plan, refusing and/or failing to maintain, repair and/or improve the property; mismanaging the books, commingling funds and failing to make timely and proper contributions to the

---

[1] It appears that the individuals named as defendants are members of the Sponsor.

3

>Association; and failing to increase maintenance fees needed to maintain the property to avoid having to pay as majority owners, and instead increasing the rents payable from Bloomfield's rental tenants in order to profit at the Unit Owner's expense.

(Drasco November 2009 Cert. ¶ 7) The State Court Plaintiffs also assert that the Sponsor has intentionally refused to sell units in order to avoid turnover of control of the Association to the unit owners. (Id. ¶ 6). On the other hand, according to the Association:

>The Sponsor believes that the disputes originated out of the Non-Sponsor Parties' refusal to pay for, over the course of many years, much needed maintenance increases and special assessments for the upkeep of Brookdale Gardens, resulting in the deterioration of the property as a whole. The Sponsor further believes that huge operating deficits generated by certain Non-Sponsor Parties' blocking of necessary maintenance increases and special assessments have also diminished the financial health of the building and the marketability of the Sponsors' unsold units.

(Turnover Motion ¶ 11).

As evidenced by the positions outlined above, the State Court Action has proved both contentious and protracted.[2] It appears that the appointment of the SFA was intended to held bring an end to the discord. The February 16, 2007 Order imposed extensive duties on the SFA and granted him broad authority as well. It provided as follows:

>ORDERED that the powers, duties, and functions of the Special Fiscal Agent shall be the following, as well as such additional powers, duties and functions as may be designed or approved by the Court at a future date as follows:
>
>1.   To become familiar with the operations of the Association, including its management and financial affairs.
>
>2.   To have full access to review the books and records of the Association and if necessary, apply to the Court for the appointment of a forensic accountant to assist in his duties.

---

[2] The Association asserts that "millions of dollars" have been spent by both sides in the State Court Action. (Turnover Motion ¶ 15).

3. To report to the Court concerning any improprieties in the operation of the Association by the parties or others.

4. With respect to future repairs, replacements and maintenance for common areas under the jurisdiction of the Association, if the parties do not agree, to act as Arbitrator under the April 1991 Stipulation of Settlement.

5. With regard to future maintenance and special assessments of the Association, if the parties do not agree, to act as Arbitrator under the April 1991 Stipulation of Settlement.

6. With regard to future budgets of the Association, if the parties do not agree, to act as Arbitrator under the April 1991 Stipulation of Settlement.

7. To review, and if necessary, report to the Court, concerning the operations of the management of the Association consistent with the law and the best interests of the Association.

8. To recommend the hiring of counsel for the Association for this and other litigation in which the Association is a party and direct such counsel for the Association with respect to handling of all matters on behalf of the Association, including this litigation and other litigation in which the Association is a party.

9. To take such actions and make such recommendations as the Special Fiscal Agent may deem appropriate concerning the conduct of this litigation and other litigation in which the Association is a party.

10. To discuss with the parties and their counsel to this litigation possible means of resolving the issues herein in a manner acceptable to the parties and consistent with the best interest of the Association and report to the Court with respect thereto.

11. The services of the Special Fiscal Agent as well as counsel for the Association shall be paid by Brookdale Gardens Condominium Association, Inc.

12. Defendant, Brookdale Gardens Condominium Association, Inc. and its former counsel Gruen & Goldstein, shall

>     cooperate with the Special Fiscal Agent and its retained counsel in the transition to new counsel of this litigation and any other pending litigation.
>
> 13. The appointment of the Special Fiscal Agent is temporary, shall terminate at the conclusion of this litigation, and is without prejudice to any party's right to move to terminate the position or remove the Special Fiscal Agent appointed hereunder.
>
> 14. In carrying out the powers created by this Order, the Special Fiscal Agent will act in a manner to minimize any disruption to the operations of the Association.
>
> 15. The Special Fiscal Agent, as soon as possible, shall review the pending fee application of Gruen & Goldstein along with any objections thereto and make a recommendation to the Court with respect thereto.

(Drasco November 2009 Cert. Ex. B) However it appears that the litigation disputes proceeded unabated.

In the course of SFA's tenure, Judge Levy expanded rather then reduced the SFA's authority over the Association. For example, in or about November 2007 the SFA learned that the Association paid the Sponsor $130,361.22 for labor, maintenance and management fees. (Certification of Dennis J. Drasco, Esq. In Further Support of Motion to Dismiss, etc.("Drasco December 2009 Cert.") Ex. 2) The SFA thereupon moved to have the Sponsor return the monies, to require that payment of funds from the Association's operation account be subject to his approval, and to have a forensic accountant appointed to examine the Association's books and records and assist the SFA in preparing a budget. (Id.) By order dated January 25, 2008, Judge Levy granted all of the relief sought by the SFA. (Id. Ex. 3) Later that year, in May 2008, the SFA sought to replace the Sponsor's property management company with an independent management company. (Id. Ex. 10) Judge Levy granted this relief as well. (Id. Ex. 9) In short, as the SFA's role

continued and expanded, the ability of the Sponsor to dominate the actions of the Association declined.

The SFA notes that the Sponsor Defendants opposed the appointment of the SFA and at times has sought (unsuccessfully) to remove or limit the powers of the SFA. (Drasco November 2009 Cert. ¶ 9) This litigation strategy by the Sponsor Defendants has also included appeals to Appellate Division of the Superior Court of New Jersey and the filing of a claim under 42 U.S.C. § 1983 against the SFA in the United States District Court for the District of New Jersey. [3] (Id.)

Furthermore, it appears that the acrimony and contentiousness of the State Court matter continued in the immediate period preceding the filing of the Chapter 11 petition. Because the Sponsor Defendants did not comply with Judge Levy's order requiring them to pay their share of a September Special Assessment for road work in the amount of $59,308.84 and their share of the August maintenance fees in the amount of $42,342.63, the SFA moved by Order to Show Cause to hold the Sponsor Defendants in contempt and to impose sanctions. (Id. ¶ 11, Ex. D) The Order to Show Cause was returnable on November 20, 2009. (Id. ¶ 12) However, no hearing was held on that day because (i) the SFA agreed to adjourn the hearing after a wire transfer of $101,651.47 (the sum of the September special assessment and the August maintenance fees) was received by the Association, and (ii) the Association filed its Chapter 11 petition on November 20, 2009. (Id. ¶ 13)

Despite the lack of a financial emergency, the Chapter 11 case was commenced by a bare petition, unaccompanied by the requisite schedules, statement of financial affairs or a corporate resolution authorizing the filing. Ultimately, all documents were filed with the court. Significantly, the certification of Sara Beer ("Beer") in support of the Association's "First Day" pleadings

---

[3] By order dated March 22, 2010, the Hon. Katherine S. Hayden dismissed the Sponsor's complaint with prejudice and imposed sanctions against the Sponsor Defendants. The order has been appealed to the Third Circuit Court of Appeals.

describes at length the proceedings in the State Court Action, and expresses dissatisfaction with the management of Brookdale Gardens by the SFA and the associated costs. Beer explicitly identifies the purpose of the Chapter 11 proceeding as follows:

> The Debtor's intention during this Chapter 11 proceeding is to end the decade long litigation that has plagued the Association.

(Certification of Sara Beer in Support of "First Day" pleadings ("Beer Cert") ¶ 56) She further identifies the reconstitution of the Association's Board and a change of its By-Laws as a goal of the reorganization effort. (Id. ¶¶ 58, 60) Likewise, Beer asserts that "authorization for the Debtor to regain control of its assets" is essential for reorganization. (Id. ¶ 61)

Shortly after the case was filed the SFA moved (i) under 11 U.S.C. § 1112(b) to dismiss the case as a bad faith filing, or (ii) alternatively, for the court to abstain and dismiss the case under 11 U.S.C. § 305(a). The SFA asserted that (i) no validly elected Board of Trustees existed to authorize the Chapter 11 filing, (ii) the SFA did not authorize the petition and (iii) the Association was not insolvent. The Association responded that (i) the petition was properly authorized, (ii) the ongoing litigation was financially burdensome and that the SFA had burdened rather that resolved the litigation and (iii) insolvency is not a requirement for filing a Chapter 11 case.

After considering the papers and argument of counsel, this court dismissed the case under § 305(a). First, the Association made no showing that any financial restructuring was required or would be undertaken. Rather, the Association's papers reflected little more than disagreement with managerial decisions made by the SFA and a desire to end the State Court Action. In fact, as part of its opposition to the SFA's motion the Association submitted a proposed Disclosure Statement and Plan of Reorganization that merely elaborated on the Beer Certification. The heart of the Association's reorganization plan remained ouster of the SFA, ending the State Court Action and

8

reorganization of the Debtor's Board.

Moreover, it is this court's assessment the Sponsor Defendants, not the Association, are the real parties who filed this bankruptcy in order to regain control over the Association. The court concludes that the loss of control in the State Court Action caused the Sponsor Defendants to seek another litigation platform. The court is also persuaded that the Association is not in need of financial restructuring. The forensic accountant appointed in the State Court Action submitted a certification in support of the SFA's motion which described the following:

- The Accountant's preparation of a proposed 2009 budget which is a break even budget, and reasonable and adequate to meet all cash flow needs of the Association.

- The Accountant's preparation of a proposed 2010 budget which included a special assessment for removal and replacement of old boilers. He specifically noted that the special assessment was required because no capital reserve fund existed when the SFA took control of the Association's finances from the Sponsor.

- The Accountant's 2008 audit of the Association's books and records revealed that any financial problems experienced by the Association resulted from the Sponsor's conduct prior to the appointment of the SFA.

(Certification of Gary B. Rosen, dated November 24, 2009 ¶¶ 5, 7 & 9)  Thus, based on the record before it, this Court concluded that the real purpose for filing for protection under Chapter 11 was not to restructure the Association's finances, but to oust the SFA and to effect a managerial and organizational restructuring, all of which could be accomplished in the State Court Action.

At the end of the hearing on dismissal the SFA renewed his request for sanctions and the court permitted him to file such a motion. The SFA seeks imposition of sanctions, including allowance of counsel fees and costs based on the frivolous nature of the bankruptcy filing and to minimize the financial burden on non-Sponsor unit owners resulting from the litigation arising from

the bankruptcy filing. Sanctions were sought under Fed. R. Bankr. P. 9011, 11 U.S.C. § 105 and 28 U.S.C. § 1927.

## **CONCLUSIONS OF LAW**

At the heart of the court's determination to abstain and dismiss this case under 11 U.S.C. § 305(a) was its determination that no financial restructuring was required and that all of the management and organizational issues raised in this court could be addressed in the State Court Action. It appeared to this court that the real purpose of the Chapter 11 case was to find a new judicial forum and circumvent the authority of Judge Levy. Thus, as a matter of comity, and in deference to the State Court Plaintiff's choice of forum, the court determined that dismissal under § 305(a) was more appropriate than dismissal under § 1112(b). *See, In re First Financial Enters., Inc.*, 99 B.R. 751, 754 (Bankr. W.D. Tex. 1989)(abstention is proper where Chapter 11 is used as a litigation strategy).

However, it must be noted that dismissal under Bankruptcy Code § 1112(b) would have been equally appropriate. It has been well established that good faith is an implied jurisdictional requirement for filing a Chapter 11 case. *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997). "At its most fundamental level, the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy." *In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 119 (3d Cir. 2004). Thus, the Third Circuit has emphasized two inquiries as central to the determination of good faith: "(1) whether the petition serves a valid bankruptcy purpose, *e.g.*, by preserving a going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical advantage." Id. at 119-20. The *Integrated* court made the further logical

observation that "[i]f a petitioner has no need to rehabilitate or reorganize, its petition cannot serve the rehabilitative purpose for which Chapter 11 was designed." Id. at 122.

A petitioner's good faith use of bankruptcy is equally of concern when considering abstention and dismissal under § 305(a). As is evident from the facts recited above, it is obvious that this Chapter 11 case was not filed in good faith. The Sponsor Defendants caused the Association to file this case solely to regain control over the Association from the SFA and to circumvent the State Court's authority to determine the future management of the Association. It is this misuse of the Bankruptcy Code and the powers of the bankruptcy court that warrants the imposition of a monetary sanction. To do otherwise would reward the Sponsor Defendants for yet another unsuccessful and vexatious litigation tactic.

The court finds that sanctions may be imposed against the Sponsor Defendants pursuant to its inherent powers.[4] Although requested, sanctions under 28 U.S.C. § 1927 are not appropriate because by its very language the statute "is designed to discipline counsel only and does not authorize imposition of sanctions on the attorney's client. *Zuk v. Eastern Pennsylvania Psychiatric Institute of the Medical College of Pennsylvania,* 103 F.3d 294, 297 (3d Cir. 1996).

Nor does Bankruptcy Rule 9011 clearly provide an adequate basis for imposing sanctions against the Sponsor Defendants. Bankruptcy Rule 9011 plainly provides that a party as well as the attorney can be sanctioned for filing a petition for an improper purpose. Here, the party is the Association, the Chapter 11 Debtor. However, the SFA seeks sanctions against non-parties, the Sponsor Defendants, for their role in causing the Association to file for bankruptcy relief. The case

---

[4]The court's December 15, 2009 Order which authorized the SFA to file a separate motion for sanctions inadvertently omitted the Sponsor Defendants as persons against whom sanctions could be imposed. From the outset of the case the Sponsor Defendants were the parties against whom the SFA sough sanctions and the failure to include them in the December 15, 2009 Order was unintentional.

11

authority on whether non-parties can be sanctioned under Bankruptcy Rule 9011 is sparse and decidedly mixed. For example, the court in *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 282 (9th Cir. 1996) upheld sanctions imposed against the debtor's principal for signing a false Statement of Financial Affairs. Similarly, in *In re Start the Engines, Inc.*, 219 B.R. 264, 271 (Bankr. C.D. Cal. 1998) the court imposed sanctions against the debtor's putative president because he directed the filing of the Chapter 11 petition. On the other hand, the court in *Gelt v. Janowitz (In re The Chisholm Co.),* 166 B.R. 706, 714-15 (D. Colo. 1994) reversed the bankruptcy court's imposition of sanctions against the debtor's president, finding that the petition was signed by the president in his corporate capacity. The Tenth Circuit Court of Appeals considered the question of whether the plain language of Bankruptcy Rule 9011 permitted the imposition of sanctions against the debtor's president for filing a bad faith petition, but opted not decide the issue and instead relied upon the court's inherent authority as a basis to affirm the bankruptcy court's award of sanctions. *In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1087-89 (10th Cir. 1994).

      This court is inclined to follow the approach taken by the Tenth Circuit. The culpable parties here are more removed from direct control over the Association than the corporate officers in the cases recited above. At the time the case was filed they did not have control over management of the Association and did not execute the Chapter 11 petition. As a consequence, their conduct does not fit easily within Bankruptcy Rule 9011. Yet, through their 80% ownership of the residential units in Brookdale Gardens they caused the Board of the Association to authorize the filing of the Association's petition. As the parties responsible for the Association's brief sojourn in bankruptcy court they, rather than the other unit owners, should bear the cost for the improper use of the Chapter 11, and the court's inherent powers provides the best basis for sanctions.

      In *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46 (1991), Justice White observed that

"...whereas each of the other mechanisms [sanctioning statutes and rules] reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." Acknowledging that the inherent powers are essential for a court to control the conduct before them, a number of courts recognize the bankruptcy court's authority to sanction for abuse of the judicial process. *See, in re Rainbow Magazine, Inc.* 77 F.3d 278, 285 (9th Cir. 1996); *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1574 (11th Cir. 1995); *Fellheimer, Eichen & Braverman, P.C. v. Charter Tech. Inc.,* 57 F.3d 1215, 1228 (3d Cir. 1995); *Courtesy Inns,* 40 F.3d 1084, 1089 (10th Cir. 1994); *Citizens Bank & Trust Co. v. Case (In re Case)* 937 F.2d 1014, 1023. (5th Cir. 1991).

Not all courts are in agreement that the court's inherent authority can be employed to reach litigation abuse by a non-party. The court in *In re VIII South Michigan Assocs.*, 175 B.R. 976 (Bankr. N.D. Ill. 1994) concluded that the court's inherent powers could be used to impose sanctions. However, it determined that the courts inherent powers could not be used to reach abusive litigation conduct by an expert witness. In part, the court employed a test set forth in *Helmac Products Corp. v. Roth (Plastics) Corp.*, 150 F.R.D. 563, 568 (E.D. Mich. 1993):

> To be subject to the Court's inherent power to sanction, a non-party not subject to court order must (1) have a substantial interest in the outcome of the litigation and (2) substantially participate in the proceedings in which he interfered.

However, even under this test sanctions can be imposed against the Sponsor Defendants. Plainly, by causing the Association to file a Chapter 11 petition the Sponsor Defendants sought to use the bankruptcy case to change the forum for resolution of the State Court Action and to dictate its outcome through confirmation of a plan of reorganization. This strategy is easily cognizable as a substantial interest in the outcome of the litigation. Further, both through the Association's counsel and counsel for the Sponsor, the Sponsor Defendants have had continuous representation since the

13

Chapter 11 case was filed and have vigorously participated in the case.

The remaining issue then, is the reasonableness of the monetary sanctions, the sum of $73,767.09. The majority opinion in *Chambers v. NASCO* cautioned that "[b]ecause of their very potency, inherent powers must be exercised with restraint and caution." *501 U.S. at 44.* Thus, in awarding the monetary sanctions the court has been mindful of the factors often considered in awarding sanctions under Federal Rule of Civil Procedure 11. The court in *In re Kunstler* enumerated them as follows:

> (1) the reasonableness of the opposing party's attorney's fees, (2) the minimum to deter, (3) the ability to pay, and (4) factors related to the severity of the Rule 11 violation.

*914 F.2d 505, 523* (4th Cir. 1990)(Citing to *White v. General Motors Corp.,* 908 F.2d 675, 684 (10th Cir. 1990).

The court awarded the full monetary sanction sought largely because the Chapter 11 filing was such a misuse of the very purpose of Chapter 11. Not only is the Association not insolvent, but as recited above, the financial restructuring has already been undertaken and accomplished by the SFA and the accountant retained in the State Court Action. As a result of their efforts the Association was and is operating under a break-even budget and all of the expenses of the Association are being met. In fact, the record amply supports the conclusion that the real purpose of the leap into bankruptcy court was to leave what the Sponsor Defendants perceived as an unfavorable forum for a hopefully more favorable forum where they could oust the SFA and regain control of the Association. This conduct is not only a misuse of Chapter 11 and the bankruptcy court, but an affront to the state court. As such, the full cost of returning the matter to the State Court is a proper sanction and the minimum necessary to deter such future conduct.

Counsel for the Sponsor objected to the fees incurred on the basis that the fees were

excessive, citing as an example to the amount of time (55 hours) spent on the sanctions motion. The court simply disagrees. First, with regard to the sanctions motion, the court required the SFA to separately file a sanctions motion which was opposed, thus requiring additional time. Additionally, once the statement of services was filed, another objection was filed, necessitating yet another response by the SFA.

Second, a fair reading of the statement of services reveals that all of the SFA's legal services were proportionate to the relief sought. Within days of the Chapter 11 filing the SFA filed the motion to dismiss, which was well supported both factually and legally. Unquestionably, the SFA's counsel was unfamiliar with some of the bankruptcy issues and expended somewhat more preparation time than an experienced bankruptcy practitioner. However, it must be noted that because the SFA's motion papers were well prepared and the matter was cogently argued, the SFA obtained dismissal of this case less than one month after it was filed. The court believes that had the SFA retained bankruptcy counsel the filing and consideration of a dismissal motion would have been considerably delayed and would have been more costly because new counsel would had to become conversant with the history of the State Court Action. Moreover, the hourly rates charged by the SFA's counsel are well within the range of hourly rates among attorneys practicing before this court. The SFA billed his time and Ms. Condon's time at $350.00 per hour and the associate at $200.00 per hour.[5]

The court also finds that the sanction award is not financially burdensome to the Sponsor Defendants. The Association has stated that as of the Chapter 11 petition date the parties had spent millions on litigation in the State Court Action. Nothing in the record before the court demonstrates that the Sponsor Defendants are not willing and able to continue to expend funds to

---

[5]The SFA noted that his usual hourly rate is $490.00 per hour.

15

resist the State Court Plaintiffs. In fact, the court further notes that the Sponsor Defendants were willing to cause the Association to incur the cost of a Chapter 11 case which they had to expect would meet the opposition of the SFA. Moreover, as the owner of 80% of the residential units, the Sponsor obviously knew that it would bear 80% of the costs of the Chapter 11 case. Finally, it is also worth observing that the Sponsor Defendants are parties in the courts oldest case, Doric Apartment Corporation, Inc.[6] As a result they well understand the costs of a Chapter 11 case. From their willingness to bear these costs, the court infers they can likewise bear the costs of the monetary sanction.

## **CONCLUSION**

The award of a monetary sanction is an appropriate sanction for the bad faith of the Association's Chapter 11 case. A sanction of $73,767.09 is properly imposed against the Sponsor Defendants for causing the Chapter 11 petition to be filed.

Dated: May 20, 2010                    _____/s/_____
                                       NOVALYN L. WINFIELD
                                       United States Bankruptcy Judge

---

[6] An abbreviated history of that case can be found at *In re Doric Apartment Corp., Inc.*, 2010 WL 147914 (January 8, 2010)(Bankr. D.N.J. 2010).